UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**COLIN EISSFELD**,   Case No. 3:13-cv-00873-KI

        Plaintiff,   OPINION AND ORDER

  v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION**,

        Defendant.

  Lance R. Clark
  8 N. State Street #301
  Lake Oswego, OR 97034

        Attorney for Plaintiff

  S. Amanda Marshall
  United States Attorney
  District of Oregon
  Ronald K. Silver
  Assistant United States Attorney
  1000 S.W. Third Ave., Suite 600
  Portland, OR 97201-2902

Page 1 - OPINION AND ORDER

John C. Lamont
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Colin Eissfeld brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Eissfeld was deemed eligible for childhood disability on May 31, 2002 (when he was ten years old) due to a combination of a neurological disorder, organic mental disorder, and social dysfunction. As required by law, Oregon Disability Determination Services initiated an Age 18 Redetermination in July 2010 and concluded, in August 2010, that Eissfeld was no longer disabled.

On February 15, 2011, a Hearing Officer affirmed the finding that Eissfeld was not disabled. After a timely request for a hearing, Eissfeld, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on December 3, 2011.

On December 27, 2011, the ALJ issued a decision finding that Eissfeld was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the

final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on March 26, 2013.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.

Page 3 - OPINION AND ORDER

§§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

**THE ALJ'S DECISION**

After assessing the medical record, the ALJ found Eissfeld's severe impairments are attention deficit hyperactivity disorder ("ADHD") and avoidant and dependent personality traits. The ALJ found these impairments, either singly or in combination, do not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ concluded Eissfeld's asthma, Chiari malformation,[1] arachnoid cysts,[2] and knee pain are not severe impairments. Based on his review of the record, the ALJ determined Eissfeld can perform a full range of work at all exertional levels, but should avoid fumes, odors, dusts, and

---

[1] "'Chiari malformations (CMs) are structural defects in the cerebellum, the part of the brain that controls balance.'" Def.'s Br. 1 n.1 (quoting from the National Institute of Neurological Disorders and Stroke website). Symptoms include neck pain, balance problems, muscle weakness, numbness, dizziness, vision problems, hearing problems, depression or headache.

[2] "'Arachnoid cysts are cerebrospinal fluid-filled sacs that are located between the brain or spinal chord and the arachnoid membrane, one of three membranes that cover the brain and spinal cord.'" Def.'s Br. 1 n.2 (quoting from the National Institute for Neurological Disorders and Stroke website). The cysts cause neurological damage if untreated.

gases. In addition, he is limited to performing unskilled work and routine tasks that do not require interpretation or problem-solving. He should have only superficial interactions with others including the public and co-workers, and he has limited mathematics skills and should not be required to perform calculations. Relying on this residual functional capacity ("RFC"), the ALJ concluded Eissfeld can perform jobs such as kitchen helper, recylcer/reclaimer, and hand packager. As a result, Eissfeld's disability ended on July 1, 2010 and Eissfeld has not become disabled again as of that date.

## FACTS

When he was six months old, Eissfeld had shunt implantation surgery to drain fluid from arachnoid cysts; he had several follow-up surgeries over the next ten years. On August 7, 2009, when he was seventeen years old, Eissfeld had a follow-up appointment at Legacy Neurosurgery Clinic and reported no problems with his shunt. Monica Wehby, M.D., thought he was doing "extremely well with his shunted arachnoid cyst" and directed him to follow up in another two years. Tr. 191.

Eissfeld was also diagnosed with Chiari I malformation when he was five or six years old. Dr. Wehby found he "remained asymptomatic from the Chiari." Tr. 191.

At the request of Disability Determination Services, Ronald Duvall, Ph.D., tested Eissfeld when he was eighteen years old. Eissfeld's Full Scale I.Q. was in the average range. His perceptual reasoning was high average, but his working memory and processing speed were in the low average range. Dr. Duvall noted that a pediatric neuropsychologist named Dr. Beebe mentioned Eissfeld's test scores supported an ADHD diagnosis in his 2001 report, and Dr. Duvall agreed the consistency between the two sets of data "is at least supportive of such a

Page 6 - OPINION AND ORDER

diagnosis" even though the test is not a definitive diagnosing tool. Tr. 195. Additional testing scores "reveal[ed] the relative weakness of some verbal skills" and attentional problems. Tr. 196. Dr. Duvall believed Eissfeld's "central problem" was ADHD, inattentive type. In short, "[w]ith his normal-range overall I.Q., he should be able to learn and recall adequately to continue to perform well enough to graduate next year. This is in spite of interference from his ADHD and from his interpersonal problems." Tr. 197.

## DISCUSSION

Eissfeld challenges the ALJ's decision on two grounds. First, he argues the ALJ failed to comply with Social Security Ruling 11-2p, which required the ALJ to account for evidence of limitations in educational and school programs, as well as in the community. He next argues the ALJ failed to fully develop the record.

I.    Social Security Ruling 11-2p

Eissfeld contends the ALJ failed to comply with Social Security Ruling 11-2p, which directs how the agency must evaluate disability in young adults. Specifically, Eissfeld contends the ALJ did not adequately account for his memory problems (as documented by his teachers), the fact that any school success was due to accommodations, and failed to consider functional limitations leading to the previous disability finding.

The crux of Eissfeld's challenge is not that the ALJ failed to comply with SSR 11-2p, but that the ALJ made the wrong inferences from the record. As SSR 11-2p directs, the ALJ "use[d] the same definition of disability as . . . for other adults." SSR 11-2p, at *2. As he was required to do, he considered information from medical sources, non-medical sources (such as teachers), school programs (internships), and the accommodations his teachers provided Eissfeld.

Page 7 - OPINION AND ORDER

The ALJ noted Eissfeld's average Full Scale I.Q. and that no physician suggested Eissfeld is disabled or has greater limitations than the ALJ identified.  Eissfeld's activities of daily living include attending college in British Columbia, living with roommates, and taking care of himself.  He rides his bicycle and likes working on model trains.  Eissfeld testified that he socializes online and talks to his roommates.  While he displays some limitations in social functioning, his college tutor, Paul Burns, Ph.D., described him as socially appropriate.   The ALJ accounted for Dr. Burns' observations about Eissfeld's school challenges by limiting Eissfeld to performing simple tasks.  Eissfeld testified that he does fairly well with spoken instructions and that, while he has trouble remembering math formulas, he has no trouble remembering dates and times, names, and faces.  The ALJ commented on Eissfeld's difficulty learning tasks and his need to focus on one task at a time, but that he always completed the assigned task.  In addition, the ALJ noted positive references from Eissfeld's internship experience.  One placement noted it would like Eissfeld to return, and another noted "[g]ood work on Excel project."  Tr. 158, 156.  Contrary to Eissfeld's argument, the ALJ was entitled to read the references as positive, rather than "inflated reports of success to so [sic] foster a 'sense of accomplishment.'"  Pl.'s Op. Br. 13; Batson v. Comm'r or Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (when evidence reasonably supports either confirming or reversing the ALJ's decision, court may not substitute judgment for ALJ).  Finally, the ALJ relied on medical consultant Robert Henry, Ph.D., who considered Eissfeld's accommodations and opined Eissfeld is capable of performing simple work.  Tr. 25, 216.

In sum, the ALJ adequately considered Eissfeld's medical record, his teachers' reports, the accommodations he received, and his successful internship work, and the ALJ's conclusion that Eissfeld is not disabled is supported by substantial evidence in the record.

II.     Developing the Record

Eissfeld argues the ALJ should have considered medical records supporting his initial disability determination. He also argues the ALJ should have requested a neuropsychological consultative examination.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The supplementation can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented. Tonapetyan, 242 F.3d at 1150.

With respect to additional medical records, Eissfeld only speculates what could be in his earlier medical records and does not explain how they would be relevant to his current functioning. He does not explain how earlier medical records could undermine the reliability of Dr. Duvall's intelligence testing, particularly when Dr. Beebe identified ADHD as a possible diagnosis back in 2001. Tr. 197. Eissfeld also does not explain how earlier medical records could contradict in any persuasive way Dr. Wehby's conclusion that Eissfeld's arachnoid cysts


and Chiari I malformation were asymptomatic. There simply was nothing ambiguous or obviously absent in the record to suggest the ALJ should question either doctor's conclusion by delving into Eissfeld's medical history.

As for the consultative examination, the agency arranged for Dr. Duvall to interview and test Eissfeld. Although Eissfeld makes much of Dr. Duvall's purportedly new diagnosis of ADHD, suggesting additional testing should have taken place to confirm the diagnosis, Eissfeld overlooks the fact that Dr. Beebe also thought ADHD might be his central problem in 2001. Additionally, Dr. Duvall did not solely rely on intelligence testing, but also based his ADHD diagnosis on the interview and Eissfeld's daily activities. Eissfeld neglects to identify any additional limitations Dr. Duvall failed to test or address.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___8th___ day of May, 2014.

                                                          /s/ Garr M. King
                                                          Garr M. King
                                                          United States District Judge